UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KRYSTLE WHITMORE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASCENSION HEALTH MINISTRY SERVICE CENTER, LLC and ASCENSIONCONNECT, LLC,<br><br>Defendants. | ) | Case No.: 1:26-cv-1086 |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Krystle Whitmore ("Plaintiff"), individually and on behalf of all others similarly situated, by counsel, hereby brings this Collective and Class Action Complaint against Defendants Ascension Health Ministry Service Center, LLC ("Ascension Health Ministry") and AscensionConnect, LLC ("AscensionConnect") (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and common law.

2. Defendants own and operate a national healthcare system and hold themselves out as having a "commitment to patients and families [that] begins with the doctors, nurses and care teams serving in [their] hospitals and care sites across the country."[1]

---

[1] *See* https://about.ascension.org/about-us (last visited May 4, 2026).

3. To support this national healthcare system, Defendants maintain patient care teams and patient care centers across the United States.[2]

4. In providing the aforementioned services, Defendants employed patient access representatives in on-site and remote settings across the United States. Defendants used a number of job titles, including, but not limited to, Patient Care Navigator, Patient Access Representative, Lead Patient Access Representative, Patient Access Representative Outpatient, and Surgical Scheduler to refer to their patient access employees (collectively referred to herein as "Patient Access Representatives" or "PARs"). Defendants heavily relied on PARs to, among other things, schedule patient appointments, send messages to medical staff, refill prescriptions, and connect patients with medical offices.

5. Defendants classified their PARs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

6. Defendants employed Plaintiff as a PAR.

7. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' PARs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]

8. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

9. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day

---

[2] *Id.*

[3] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Aug. 1, 2023).

for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

10. Defendants violated the FLSA and common law by systematically failing to compensate their PARs for work tasks completed before their scheduled shifts and during their unpaid meal periods when they were not logged into Defendants' timekeeping system, which resulted in PARs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime and in non-overtime workweeks, for regular hours.

11. More specifically, Defendants failed to compensate PARs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking into Defendants' timekeeping system.

12. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding unpaid back wages, liquidated damages, attorneys' fees and costs to make them whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendants will not subject future workers to the same illegal conduct in the future.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14. Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

15. Defendants' annual sales exceed $500,000, and Defendants have more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendants' PARs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16. Plaintiff's state-law claims originate from the same facts that form the basis of her federal claims. Thus, the Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367.

17. The Court has personal jurisdiction over Ascension Health Ministry because Ascension Health Ministry conducts business within the State of Indiana, employs individuals within the State of Indiana, is registered with the Indiana Secretary of State, and maintains its principal place of business in the State of Indiana.

18. The Court also has personal jurisdiction over AscensionConnect because AscensionConnect regularly conducts and transacts business within the State of Indiana, employs and/or jointly employs individuals within the State of Indiana, and purposefully avails itself of the privilege of conducting activities in the State of Indiana through its operations with Ascension Health Ministry.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Ascension Health Ministry's principal place of business is in this District and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## PARTIES

20. Plaintiff is a resident of Memphis, Tennessee, and worked remotely for Defendants as an hourly, non-exempt PAR with the specific job title of Patient Care Representative from approximately May 2023 through November 2025. Defendants compensated Plaintiff through the

payment of an hourly rate, most recently $17.34 per hour. Plaintiff's consent to join this collective action is attached hereto as **Exhibit A**.

21. Defendant Ascension Health Ministry is an Indiana limited liability company registered with the State of Indiana. Ascension Health Ministry maintains a registered agent for service of process listed as Corporation Service Company, 135 North Pennsylvania Street, Suite 1600, Indianapolis, Indiana 46204.

22. Defendant AscensionConnect is a Missouri limited liability company and maintains a registered agent for service of process listed as CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

23. At all times relevant to this action, Defendants were a common enterprise and "joint employers" of Plaintiff and similarly situated individuals as defined by the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2(a).

## GENERAL ALLEGATIONS

24. Defendants paid their PARs at varying hourly rates.

25. Defendants' PARs typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

26. While Defendants have access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

27. Prior to hiring, Defendants provided prospective PARs with a written offer setting forth the PAR's terms of employment, the offered rate of pay, work schedule and other information.

28. Defendants maintain documents demonstrating the promised hourly wage for each PAR, including, but not limited to: offer letters, paystubs, and/or other payroll records.

29. Plaintiff received such an offer from Defendants to work as a PAR and she accepted Defendants' offer with the understanding that her base hourly rate would be paid for all hours worked.

30. In consideration for Plaintiff's work as a PAR, Defendants promised to pay Plaintiff her hourly wage for each hour she worked for Defendants, as well as any overtime hours worked.

31. Plaintiff performed and fulfilled her duties under her contract with Defendants by carrying out her job responsibilities, which included, but were not limited to, scheduling patient appointments, sending messages to medical staff, refilling prescriptions, and connecting patients with medical offices. The aforementioned customer service was provided via inbound and outbound calls and Plaintiff utilized Defendants' applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

32. Defendants provided training to PARs on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendants' policies. The training that all of Defendants' PARs received was substantially, if not entirely, the same.

33. At all relevant times, Defendants controlled Plaintiff and all other PARs' work schedules, duties, protocols, applications, assignments, and employment conditions.

34. In order to perform their job duties, Plaintiff and Defendants' PARs required a computer and a variety of essential and indispensable computer programs, applications, and servers.

35. Plaintiff and other similarly situated PARs were instructed to be call ready the moment their scheduled shift started, yet Defendants prohibited them from clocking in before the start of their shift. This required Defendants' PARs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls the moment their shifts began. During the boot-up and login process, Defendants' PARs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

36. Defendants' PARs necessarily had to perform off-the-clock work every shift because Defendants relied exclusively on a web-based timekeeping platform to track their PARs' hours, including Plaintiff's hours, worked. Therefore, Defendants' PARs were unable to clock in unless and until they performed off-the-clock work before the start of their scheduled shifts and before they could access and log into (and therefore clock into) the platform.

37. Additionally, Defendants maintained schedule adherence and attendance metrics pursuant to which they monitored the PARs' clock in times in relation to their start of shift time, as well as the time the PARs went into a "ready" status. Defendants enforced these policies and procedures by routinely evaluating PARs and, at times, disciplining them. This discipline included, but was not limited to, verbal warnings, write-ups, and termination.

38. During Plaintiff's employment, Plaintiff was reprimanded for clocking in before the start of her scheduled shift and was instructed to clock in no earlier than the start of her scheduled shift.

39. All of Defendants' PARs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an important part of the PARs' work and they could not perform their jobs without them.

40. Defendants' PARs also performed off-the-clock work when returning from lunch and preparing themselves to be call ready the moment their meal periods concluded.

41. At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and their PARs in order to pressure them into performing pre- and mid-shift work off-the-clock.

42. The pre- and mid-shift off-the-clock time Plaintiff and all other PARs spent booting-up/logging into their computers and applications and programs directly benefited Defendants and was integral and indispensable to the PARs' job responsibilities.

43. As a result of the pre- and mid-shift off-the-clock work described herein, Plaintiff and other PARs were unlawfully deprived of approximately twenty-five (25) to forty-five (45) minutes of compensation every day.

44. At all relevant times, Defendants were able to track the amount of time Plaintiff and similarly situated PARs spent in connection with the pre- and mid-shift activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other PARs for the off-the-clock work they performed, thus breaching their contracts with their PARs.

45. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that it acted in good faith.

46. Despite knowing Plaintiff and all other PARs performed this pre- and mid-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

47. Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and all other PARs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

48. Upon information and belief, Defendants also possess, control, and/or have access to information and electronic data indicating when Plaintiff and all other PARs experienced technical issues.

49. Because Defendants required their PARs, including Plaintiff, to perform pre- and mid-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time PARs spent working for Defendants. Thus, the hours reflected on the PARs' paystubs are also inaccurate representations of the hours they worked.

**A. <u>Pre-Shift Off-the-Clock Work</u>**

50. The off-the-clock pre-shift process took substantial time on a daily basis, approximately twenty (20) to thirty (30) minutes per shift. Specifically, before each shift PARs had to undertake the following essential work tasks:

a. Turn on their computer;

b. Log into Microsoft Windows using their password;

c. Connect and log into Defendants' server (the Virtual Private Network or "VPN") using a two-factor authentication;

d. Open and log into Microsoft Outlook (Defendants' email application);

e. Open and log into Microsoft Teams (Defendants' application for internal communications with managers and other team members);

f. Open and log into Epic software (Defendants' application for their patients' electronic health records);

g. Open and log into Salesforce (Defendants' application for processing patient transactions);

h. Open and log into Kronos, the timekeeping system, using a username and password;

i. Log into the phone system; and

j. Clock in and go into a "ready" status.

51. Defendants' PARs had to complete this process before the start of their scheduled shifts and before fielding calls. Consequently, the PARs had to arrive to work approximately twenty (20) to thirty (30) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

52. Defendants' PARs were not compensated for this time because Defendants prohibited PARs from clocking into their timekeeping software before the start of their scheduled shift.

53. The pre-shift off-the-clock work PARs performed directly benefited Defendants and was integral and indispensable to their job duties and responsibilities as PARs.

**B. Meal-Period Off-the Clock Work**

54. Defendants promised Plaintiff and similarly situated PARs one unpaid thirty (30) minute meal period each eight (8) hour shift.

55. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

56. At all relevant times, Plaintiff and Defendants' PARs regularly performed at least five (5) to fifteen (15) minutes of compensable work for Defendants during their uncompensated "meal breaks."

57. More specifically, Defendants required Plaintiff and similarly situated PARs to return to their computer stations prior to the end of their unpaid meal periods to log back in and place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

58. If PARs were not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal breaks, they were considered out of adherence and could be subjected to disciplinary action.

59. The off-the-clock work Plaintiff and other PARs performed during their meal periods was compensable, directly benefited Defendants and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as PARs.

60. Defendants did not prohibit Plaintiff and similarly situated PARs from working during their “meal breaks.” Instead, Defendants routinely suffered or permitted them to perform such work and routinely failed to ensure that work was not being performed during their “meal breaks.”

61. Defendants knew or should have known that Plaintiff and their PARs performed work during their unpaid “meal breaks” because, *inter alia*, Plaintiff and the PARs performed such work for Defendants at management’s request and were rewarded for it through Defendants’ schedule adherence metrics.

62. Despite knowing that Plaintiff and similarly situated PARs worked during their “meal breaks,” and receiving, accepting, and enjoying the benefits from such work, Defendants failed to compensate them for it.

### C. The Off-the-Clock Work Results in Viable “Gap Time” Claims

63. “Gap time” claims are those “in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours.” *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) (“we hold that overtime gap time claims are cognizable under the FLSA”).

64. Plaintiff, and similarly situated PARs, regularly worked non-overtime hours (i.e. “gap time”) for which she was not paid.

65. During the weeks that PARs did not work over forty (40) hours in a workweek, the outcome of Defendants’ policies and practices was a deprivation of straight time wages, in breach of Defendants’ contracts with their PARs.

## JOINT EMPLOYMENT ALLEGATIONS

66. At all relevant times, Defendants were, at minimum, joint employers of Plaintiff and other PARs.

67. At all relevant times, Defendants managed the day-to-day supervision and direction of Plaintiff and the PARs.

68. At all relevant times, Defendants' corporate policies and procedures guided and mandated Plaintiff and the PARs' jobs.

69. At all relevant times, Defendants maintained Plaintiff and other PARs' employment records.

70. The unlawful conduct at issue in this case arises from Defendants' corporate policies for PARs.

## COMMON ENTERPRISE ALLEGATIONS

71. As discussed herein, Defendants were engaged in a common enterprise relative to the operations and employment of Plaintiff and PARs. More specifically, and as alleged herein, Defendants operated in an integrated manner with respect to centralized patient access operations, policies, payroll, scheduling, timekeeping, and other employment practices.

72. Defendants were engaged in the aforementioned business for the joint purpose of supporting Ascension-affiliated healthcare facilities, providers, and patients nationwide.

73. Defendants operated under common branding and coordinated control such that they acted directly or indirectly in the interest of one another with respect to Plaintiff and PARs.

## COLLECTIVE ACTION ALLEGATIONS

74. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

***All current and former similarly situated PARs who work or have worked for Defendants at any time during the past three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

75. Excluded from the FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

76. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

77. Consistent with Defendants' policies and practices, Plaintiff and the FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

78. All of the work Plaintiff and the FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work the Plaintiff and the FLSA Collective performed.

79. Defendants were aware, or should have been aware, that federal law required them to pay Plaintiff and the FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

80. As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for all regular hours that they worked off-the-clock in non-overtime workweeks;

b. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and

c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendants.

81. Defendants' unlawful conduct has been widespread, repeated, and consistent.

82. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

83. The employment relationships between Defendants and every FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every FLSA Collective member, to wit: whether the FLSA Collective members were (1) required to work uncompensated boot-up and login time and (2) entitled to overtime gap time in overtime workweeks.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

84. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former similarly situated PARs who work or have worked for Defendants at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

85. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

86. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

c. Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants.

87. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

88. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

89. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

90. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

91. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

92. Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, et seq. -- FAILURE TO PAY OVERTIME**

93. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

94. At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

95. At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

96. At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

97. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

98. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were are all non-exempt employees.

99. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

100. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

101. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.1, *et seq*.

102. At all times relevant to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to work off-the-clock, every shift, and failed to pay these employees overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed.

103. The off-the-clock work Plaintiff and the FLSA Collective performed every shift was an essential part of their job duties and the activities and the time associated with the activities was significant.

104. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

105. As a result of Defendants' unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

106. Defendants' violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiff and the FLSA Collective members for all work activities, but did not.

107. As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendants including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## NATIONWIDE BREACH OF CONTRACT

108. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

109. At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

110. Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for PAR work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

111. For example, Defendants offered to compensate Plaintiff at an hourly wage, most recently $17.34 per hour, if she agreed to perform services for Defendants as a PAR. Plaintiff accepted Defendants' offer and performed her duties as a PAR in reliance on the offer.

112. Defendants breached their contractual promises by failing to pay PARs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

113. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate that varied within the applicable period.

114. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and mid-shift work described herein.

115. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

116. Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

117. Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

118. Defendants also breached their duties of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

119. As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

120. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

121. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

122. At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendants' benefit.

123. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

124. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

125. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

126. Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

127. Despite this, Defendants did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

128. Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures.

129. Defendants were unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

130. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

131. As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including, but not limited to, loss of wages.

## REQUESTED RELIEF

WHEREFORE, Plaintiff Krystle Whitmore, individually and on behalf of all others similarly situated, requests the following relief:

A. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

B. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

C. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, and phone numbers of all proposed FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

D. An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

E. An Order declaring Defendants violated the FLSA;

F. An Order declaring Defendants' violations of the FLSA were willful;

G. An Order declaring Defendants breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendants were unjustly enriched) by failing to pay them for mandatory pre- and mid-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

H. An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

I. An Order compelling a complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

J. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

K. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

L. An Order awarding such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff Krystle Whitmore, individually and on behalf of all others similarly situated, by counsel, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Respectfully submitted,

*s/Kimberly D. Jeselskis*
Kimberly D. Jeselskis, Attorney No. 23422-49
JESELSKIS BRINKERHOFF AND JOSEPH, LLC
320 North Meridian Street, Suite 428
Indianapolis, Indiana 46204
Telephone: (317) 220-6290
Fax: (317) 220-6291
kjeselskis@jbjlegal.com

Jason J. Thompson (P47184)
Alana A. Karbal (P82908)
*(Pro Hac Vice forthcoming)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: (248) 355-0300

Facsimile: (248) 936-2143
jthompson@sommerspc.com
akarbal@sommerspc.com

*Counsel for Plaintiff, the FLSA Collective and the Putative Class*